UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RANDY THEILMAN | : | PRISONER |
| *Plaintiff* | : | NO. 3:03CV528(DJS)(TPS). |
| | : | |
| v. | : | |
| | : | |
| JOHN ARMSTRONG, ET AL | : | |
| *Defendants* | : | APRIL 27, 2005 |

## THE DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56 of the Local Rules of Civil Procedure, the defendants, former Commissioner John Armstrong, Brian Murphy, David Gallo, and A. Quiros, file this statement of undisputed material facts in support of their Motion for Summary Judgment.

1. At all times alleged in the Complaint, the plaintiff was a sentenced and convicted inmate in the custody of the State of Connecticut Department of Correction and housed at the MacDougall Correctional Institution, (hereinafter referred to as "MacDougall"), in Suffield, Connecticut. Exhibit A[1], para. 4. The plaintiff was housed at MacDougall from February 2, 2001 to the date of the incident. Exhibit B[2].

---

[1] Exhibit A: Plaintiff's Complaint, dated March 10, 2003.
[2] Exhibit B: Department of Correction Inmate Transfer Record.

2. On or about April 30, 2002, the plaintiff was walking on the top tier in the J2 unit eating an apple. Exhibit C[3]. He started walking down the stairway near the shower area when he slipped on a wet step and fell down the remaining ten steps to the bottom of the flight. Exhibit A. para. 16.

3. At the time of his fall, the plaintiff was the only person on the stairs. Exhibit C. After he fell, he immediately stood up and walked away. Exhibit C. Correctional officer Gallo was present in the area, but did not see the plaintiff fall, but did see him get up off of the floor. Exhibit D[4]. The plaintiff told officer Gallo that he slipped down the stairway hitting his lower back and hip area. Exhibit C & D. He also told Captain Quiros, that prior to his fall he did not notice that the stairway was wet, but he was aware that when it's raining outside the unit's roof leaks water. Exhibit C.

4. The knowledge that the roof leaked water when it rained was not limited to the plaintiff, but was well known among the inmates. Indeed. Inmate Douglas Johnson also knew that the roof directly over the stairs in the J2 unit at MacDougall had been leaking water into the unit for several years and that whenever it rained or snowed outside the roof leaked, flooding the stairs and causing them to become very slick and slippery because the steps do not have a non-slip surface, thus making them very dangerous when wet. Exhibit E[5]. These were exactly the same observations of inmates Marco A. Morales, Exhibit F[6]; Charles Tyson, Exhibit G[7]; Robert Brayall, Exhibit H[8]; and inmate Scott Riley. Exhibit I[9].

---

[3] Exhibit C: Department of Correction Incident Report No. 02-0505, by Captain A. Quiros.
[4] Exhibit D: C/O Gallo's Incident Report dated April 30, 2002.
[5] Exhibit E: Affidavit of inmate Douglass Johnson, dated May 2, 2002.
[6] Exhibit F: Affidavit of inmate Marco A. Morales, dated May 2, 2002.
[7] Exhibit G: Affidavit of inmate Charles Tyson, dated May 2, 2002.
[8] Exhibit H: Affidavit of inmate Robert Brayall, dated May 2, 2002.
[9] Exhibit I: Affidavit of inmate Scott Riley, dated May 2, 2002.

5.      The condition of the roof, that it leaked when it rained, was also known to Unit Manager Quiros, as he reported it monthly, from September 2001, until it was repaired in June 2002 and stayed dry through July, 2002.  Exhibit J[10].

After speaking with the plaintiff, correctional officer Gallo checked the condition of the stairs and noticed that they were wet due to a leak from the roof.  Exhibit D.  Correctional officer Gallo sent the plaintiff to the medical unit for examination and then immediately had the staircase roped off and "wet floor" signs put up.  Exhibit D.

6.      Upon arrival in the medical unit, the plaintiff was seen by Nurse Dolan.  Exhibit K[11].  The plaintiff told her that he had fallen down the stairs near the showers and that his hip and back hurt. Exhibit K.  The plaintiff was examined and was given a rubber glove full of ice and a bottle of Motrin.  Exhibit A, para. 21; Exhibit K.  Nurse Dolan took photographs of redness on his back and scheduled him for x-rays the next morning.  Exhibit A, para. 21; Exhibit K.  The medical record noted that the plaintiff was "fully ambulatory and had a full range of movement".  Exhibit K.

7.       After he was treated by Nurse Dolan, the plaintiff returned to his cell without further issue.  Exhibit L[12].  Nurse Dolan then reported to Lt. Reardon that the plaintiff appeared to have suffered no serious injury, with only redness noted on his back, which was photographed. Exhibit L.

---

[10]  Exhibit J:  Unit Manager's Monthly Report for the months of September, October, December 2001; January, February, March, April, June and July 2002.
[11]  Exhibit K:  Medical Incident Report, dated April 30, 2002, by Nurse Dolan.
[12]  Exhibit L:  Incident Report by Lt. Reardon, dated April 30, 2002.

      8.      The same day as his fall, the plaintiff filed an inmate grievance in which he stated in part that he "slipped because the roof directly above the staircase mentioned leaks water severely whenever it rains. It's been this way for years now." Exhibit M[13].

      9.      The next morning, May 1, 2002, the plaintiff had several x-rays taken of both his hip and back areas. Exhibit A, para. 22. The plaintiff was also seen by a doctor who prescribed a daily dosage of 600 mg of Motrin and 10 mg of Flexaril for his back and hip pain. Exhibit A, para. 23.

      10.      On May 9, 2002, the plaintiff filed an inmate request form requesting to see the doctor for pain in his back due to his fall on the stairs. On May 13, 2002, the plaintiff received a written response informing him that the doctor had ordered more x-rays for his back and that they should be done that week. Exhibit A, para. 25 & 26; Exhibit N[14]. And in response to his complain of continued pain, the plaintiff's prescription for Motrin was extended and he was advised to take hot showers and stretch. Exhibit A, para. 28.

      11.      On June 20, 2002, the plaintiff filed an inmate grievance requesting to see a back specialist, even though the all of the x-rays of his back came back negative for any injury. On July 7, 2002, he received a written response to his grievance in which he was reminded that he had been told that back injuries take time to heal and that he was scheduled to see the doctor again, but not for a while. Exhibit A, para. 29; Exhibit O[15].

---

[13] Exhibit M: Inmate Grievance, dated April 30, 2002.
[14] Exhibit N: Inmate Request Form, dated May 9, 2002 with response dated May 13, 2002.
[15] Exhibit O: Inmate Grievance Form A, Level 1, dated June 20, 2002.

12. On August 28, 2002, the plaintiff was seen by medical in response to his complaint of back pain and was advised not to participate in sports for six months, or lift in excess of ten pounds at work. Exhibit A, para. 32; Exhibit P[16].

13. On September 30, 2002, the plaintiff filed his second inmate grievance, requesting money damages for his pain and suffering as a result of his slip and fall injury. Exhibit Q[17]. On October 23, 2002, the plaintiff received a written response advising him that "the inmate grievance system does not provide monetary funds for physical of psychological claims by inmates. Your grievance has been denied. You can file a personal injury claim with the office of the claims commissioner". Exhibit Q.

14. On September 30, 2002, the plaintiff filed another inmate grievance requesting to see a back specialist, even though multiple x-rays showed no injury to his back. Exhibit A, para. 29; Exhibit R[18]. On October 22, 2002, the plaintiff received a written response to this grievance which stated that he was seen and assessed on October 3, 2002 and that he was scheduled to be seen again in the near future. Exhibit R.

15. On October 2, 2002, the plaintiff filed an inmate request form asking to be seen by a back specialist, even though he'd had x-rays several times and been told there's nothing there. Exhibit S[19].

16. On November 12, 2002, the plaintiff filed a level 2 grievance stating that he had not received any treatment for his back pain other than Motrin. Exhibit T[20]. The plaintiff's

---

[16] Exhibit P: Memo to all staff advising them of medical restrictions for the plaintiff, dated August 28, 2002.
[17] Exhibit Q: Inmate Grievance filed by plaintiff, dated September 30, 2002
[18] Exhibit R: Inmate Grievance filed by plaintiff, also dated September 30, 2002.
[19] Exhibit S: Inmate Request Form, dated October 2, 2002.
[20] Exhibit T: Inmate Grievance Level 2, dated November 12, 2002.

5

grievance was responded to on February 6, 2003, and stated that a doctor had seen the plaintiff on August 29, 2002 and again on January 13, 2003. Exhibit T.

    17.    A memorandum from Jack O'Neill, a Counselor Supervisor at the MacDougall Walker Facility to Ken White, a Plant Facilities Engineer, dated September 25, 2002, states that the ductwork attached to the rooftop fan units at MacDougall/Walker have leaked since shortly after the institution was opened and that repair of the MacDougall building units were slated for completion no later than October 30, 2002. Exhibit U[21] The memorandum also stated that a test repair of the MacDougall Building roof had been completed above the administrative areas to facilitate access and minimize the impact of failed solutions. Exhibit U.

    18.    On February 4, 2005, the plaintiff was released from the custody of the Department of Correction to Supervised Parole.  Exhibit B.

---

[21]  Exhibit U:  State of Connecticut Department of Correction Facilities Management & Engineering Memorandum, dated September 25, 2002.

                              DEFENDANTS
                              JOHN ARMSTONG, ET AL

                              RICHARD BLUMENTHAL
                              ATTORNEY GENERAL


BY:    /s/_____
       Robert B. Fiske, III
       Assistant Attorney General
       Federal Bar No. 17831
       110 Sherman Street
       Hartford, CT  06105
       Tel: (860) 808-5450
       Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing, was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this, the ____ day of April, 2005, first class postage prepaid to:

Mr. Randy Theilman
303 Mohegan Park Road
Lot # 34
Norwich, CT 06360

                                                                     /s/ _____
                                                              Robert B. Fiske, III
                                                              Assistant Attorney General